**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **LAM VAN "TOMMY" NGUYEN** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO.** |
| | § | |
| **QUALITY SAUSAGE COMPANY,** | § | |
| **LLC** | § | |
| | § | |
| **Defendant** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

LAM VAN "TOMMY" NGUYEN hereby files his Original Complaint against Quality Sausage Company, LLC and, for cause of action, would respectfully show the Court the following:

## PARTIES

1.   Plaintiff Lam Van "Tommy" Nguyen is a legal resident of the United States who resides in Arlington, Tarrant County, Texas.

2.   Defendant Quality Sausage Company, LLC is a foreign limited liability company which may be served with process by serving its registered agent for service of process CT Corporation, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

## JURISDICTION

3.   This action arises under the anti-retaliation provision of the FDA Food Safety Modernization Act set forth in Title 21 U.S.C.A. § 399d. Accordingly, this action arises under federal law giving this Court original jurisdiction pursuant to Title 28

U.S.C.A. §§ 1331, 1337. In addition to the averments set forth in this Complaint, including under the "Statement of the Claim" and "Cause of Action" and "Damages," the following averments are made in support of this Court's original jurisdiction over this matter:

A.     On July 20, 2018, Lam Van "Tommy" Nguyen (hereafter "Nguyen") filed his original complaint against Quality Sausage Company, LLC (hereafter "Quality Sausage") with the Secretary of the Department of Labor, by and through the Occupational Safety and Health Administration (hereafter "OSHA"). Nguyen's complaint asserted a cause of action pursuant to the FDA Food Safety Modernization Act (hereafter "FSMA"), specifically 21 U.S.C.A. § 399d *et seq.*

B.     On December 12, 2018, Nguyen received a copy of the findings issued by OSHA regarding Nguyen's FSMA complaint against Quality Sausage.

C.     On January 4, 2019, and in compliance with § (b)(2)(B) of the FSMA and 29 C.F.R. § 1987.106(a), Plaintiff filed with the Chief Administrative Law Judge for the United States Department of Labor Plaintiff's Objections to Secretary's Findings and Request for Administrative Law Judge Hearing. In further compliance with § (b)(2)(B) of the FSMA as well as 29 C.F.R. § 1987.106 (a), at the same time Nguyen filed the foregoing Objections and Request for Administrative Law Judge Hearing with the Chief Administrative Law Judge (January 4, 2019), Nguyen properly served the following persons with such filing, as set forth in the Certificate of Service:

(1)     Quality Sausage by and through its counsel of record Allyn Lowell of

the Meaders & Lanagan law firm;

(2)     The Regional Administrator of the United States Department of Labor - OSHA;

(3)     Anthony Incristi, Assistant Regional Administrator of the United States Department of Labor - OSHA;

(4)     The Assistant Secretary and Deputy Assistant Secretary of the United States Department of Labor - OSHA; and

(5)     Jennifer S. Brand, the Associate Solicitor of the United States Department of Labor, Division of Fair Labor Standards.

In addition to a true and correct copy of such document, Nguyen included a true and correct copy of a facsimile transmittal confirmation sheet that confirmed Nguyen's Objections to Secretary's Findings and Request for Administrative Law Judge Hearing had been properly faxed to and received by the Chief Administrative Law Judge for the United States Department of Labor. All such documents (Nguyen's Objections to Secretary's Findings and Request for Administrative Law Judge Hearing and the facsimile transmittal confirmation sheet) were placed in properly addressed envelopes with proper postage paid to ensure deliver by the United States Postal Service to each of the foregoing recipients. The date of the postmarks, facsimile transmittal, and/or electronic communication wherein such documents were filed and/or served on the foregoing recipients is January 4, 2019. January 4, 2019 was the 23rd day after December 12, 2018.

D.     As averred above, Nguyen filed his original complaint against Quality Sausage

on July 20, 2018. Friday, February 15, 2019 was the 210th day after July 20, 2018. The Secretary of Labor has not issued a final decision within 210 days of the filing of Nguyen's complaint. *See* 21 U.S.C.A. § 399d (b)(4)(A); 29 C.F.R. § 1988.114(a).

E.   Plaintiff has filed this action in an appropriate district court of the United States. *See Id*. Accordingly, this Court has jurisdiction over this action pursuant to 21 U.S.C.A. § 399d (b)(4)(A), 29 C.F.R. § 1988.114(a), and 28 U.S.C.A. §§ 1331, 1337.

## VENUE

4.   Venue is proper in the Northern District of Texas under 28 U.S.C.A. § 1391 (b)(1) and (2). Defendant's principal place of business is located in the Northern District of Texas. Moreover, all or a substantial part of the events giving rise to Plaintiff's claim occurred in the Northern District of Texas. Plaintiff, his wife, and his children reside in the Fort Worth Division of the Northern District of Texas. Moreover, Plaintiff was terminated by Quality Sausage while at his residence in the Fort Worth Division of the Northern District of Texas.

## STATEMENT OF THE CLAIM

5.   **Quality Sausage is a covered entity under the FSMA:**

A.   At all times relevant, Quality Sausage was engaged in the manufacturing, processing, packing, transporting, distribution, holding, and/or importation of food products intended for human consumption;

B.   At all times relevant, Quality Sausage was a supplier of cooked meats and pepperoni.

C.     In its February 16, 2016 Application for Registration of a Foreign Limited Liability Company filed with the Office of the Secretary of State for The State of Texas, Quality Sausage stated it is a "Manufacture[r] of Meat Products Supplied to Food Manufacturing & Restaurant Industries."

D.     On its website Quality Sausage states that it provides "Custom Fully Cooked Meat Products for the Food Manufacturing and Restaurant Industries."

E.     One of the Secretary's findings was that Quality Sausage "is an entity engaged in the manufacture of food, within the meaning of 21 U.S.C.A. §399d(a)." Quality Sausage has not objected to such finding and agrees with such finding.

F.     At all times relevant, Quality Sausage was an entity covered under the FSMA.

6.   **Nguyen was a covered person under the FSMA:**

A.     At all times relevant, Nguyen was an employee of Quality Sausage, which at all times relevant was a covered entity under the FSMA.

B.     One of the Secretary's findings was that Nguyen was "an employee within the meaning of 21 U.S.C.A. §399d(a)." Quality Sausage has not objected to such finding and agrees with such finding.

7.   **Nguyen engaged in protected activity while a Quality Sausage employee:**

A.     While an employee of Quality Sausage Nguyen engaged in protected activity under the FSMA.

B.     Nguyen's FSMA protected activity while employed by Quality Sausage is summarized as follows:

(1)     Nguyen was a Plant Superintendent for Quality Sausage from

November 1, 2016 to March 5, 2018. Nguyen's usual shift was the night shift.

(2)    At all times relevant, Nguyen's immediate supervisor was Todd Gilbert (hereafter "Gilbert"). Gilbert's title was "Director of Operations." At all times relevant, Gilbert essentially exercised total control over Quality Sausage's plant operations, including hiring and firing of personnel.

(3)    During Nguyen's employment for Quality Sausage he came to believe that Quality Sausage was engaged in a longstanding pattern and practice of knowingly employing unauthorized alien workers ("UA") at its plant.

(4)    Quality Sausage has approximately 270 people working at its food processing/manufacturing plant located in the Northern District of Texas.

(5)    As Plant Superintendent for Quality Sausage, Nguyen came to believe that approximately two thirds of Quality Sausage's plant workforce are UAs supplied through the "temp agency" Archer Services, LLC, the local office of which is located at Suite #4, 1619 W. Irving Blvd, Irving, Texas 75061.

(6)    Quality Sausage's payroll records, including its "Time Card Report," identifies all workers supplied by Archer Services, LLC (hereafter "Archer Services") to Quality Sausage. The "Time Card Report" for Archer Services workers is electronically stored by Quality Sausage and can be easily printed. These reports identify "Archer Services" as

the source for each worker supplied to Quality Sausage by Archer Services.

(7)     At all times relevant, Archer Services was owned by Ruben and Elva Lisa Lozano, and its corporate offices are located at 326 South Texas Ave., Suite #2, Mercedes, Texas 78570. Mr. Lozano owns other similar entities, all operating out of the same address: Archer Personnel Services, LLC, and Advance Personnel Incorporated. Mercedes, Texas is very close (approximately 10 miles) from the Texas/Mexico border.

(8)     Nguyen reasonably believed that Quality Sausage was engaged in illegal conduct by recruiting and hiring UAs through Archer Services. At all relevant times, Quality Sausage has been engaged in illegal conduct by recruiting and hiring UAs. *See* 8 U.S.C.A. § 1324a. (1) (A) ("It is unlawful for a person or other entity to hire, or to recruit . . . for employment in the United States an alien knowing the alien is an unauthorized alien . . . with respect to such employment"). At all relevant times, Quality Sausage is engaged in illegal conduct by using Archer Services to supply the UA workforce to Quality Sausage. *See Id.* at ¶ (4) ("For purposes of this section, a person or other entity who uses a contract, subcontract, or exchange . . . to obtain the labor of an alien in the United States knowing that the alien is an unauthorized alien . . . with respect to performing such labor, shall be considered to have hired the alien for employment in the United States in violation of paragraph (1)(A)").

(9)     Gilbert admitted to Nguyen that the workers supplied by Archer Services to Quality Sausage were UAs.

(10)    Quality Sausage does not itself use E-Verify in screening persons supplied by Archer Services for their eligibility to work in the United States.

(11)    Quality Sausage's Human Resource Manager Ida Jimenez has made statements confirming that she believes the workers supplied by Archer Services are UAs. Ida Jimenez has acknowledged that the paperwork for workers supplied by Archer Services is not legitimate.

(12)    Part of the reason that Nguyen's belief that Quality Sausage was engaged in illegal activity was his exposure to news articles reporting law enforcement action taken against other persons or entities who/which employed UAs. There have been numerous news articles reporting law enforcement action taken against other persons or entities who/which employed UAs, for example the following:

- https://www.ice.gov/news/releases/ice-arrests-364-criminal-aliens-and-immigration-violators-30-day-enforcement-surge-6;

- https://www.ice.gov/news/releases/houston-based-waste-management-company-forfeits-more-55-million-knowingly-hiring;

- https://www.nbcnews.com/news/us-news/more-150-arrested-massive-ice-raid-texas-n904581;

- https://www.cnn.com/2018/08/29/us/texas-ice-raid-arrests/index.html;

- http://www.foxnews.com/us/2018/06/20/over-100-arreste

d-in-second-large-scale-immigration-raid.html;

- https://www.texastribune.org/2018/03/05/even-after-ice-r aid-few-american-workers-showed-work-texas-meatpacking/;

- https://www.cleveland.com/metro/index.ssf/2018/06/ice_a rrested_146_workers_at_oh.html;

- https://www.washingtonpost.com/local/immigration/ice-rai ds-meatpacking-plant-in-rural-tennessee-more-than-95-im migrants-arrested/2018/04/06/4955a79a-39a6-11e8-8fd2-4 9fe3c675a89_story.html?noredirect=on&utm_term=.bb003 e3dbb9a.

(13)  Nguyen believed that Quality Sausage's use of UAs in the manufacturing/processing/storing/shipping of its food products posed numerous threats to food safety for numerous reasons, including the following:

(a)  Nguyen believed that the UAs were and are not properly trained to safely engage in the manufacturing or processing or shipping of food products.

(b)  UAs are not medically screened prior to entering the United States. Numerous articles document these issues, including the following:

- https://sma.org/illegal-immigration-and-the-threat-o f-infectious-disease/;

- https://www.ncbi.nlm.nih.gov/pmc/articles/PMC463 4824/;

- https://www.psychologytoday.com/us/blog/patient-p ower/201701/do-illegal-immigrants-pose-health-risk- us-all.

Legal immigrants are medically screened for numerous

infectious diseases that are more prevalent in less developed countries or countries (like Venezuela) that have experienced a crisis leading to a significant erosion of the country's health-care system.

(c)   Nguyen believed that there is a nexus between UAs and criminal activities (including terrorism and criminal gang affiliations).

(d)   There is a nexus between UAs and miscommunication due to a language barrier. Many of Quality Sausage's UAs are not proficient in English. For example, Quality Sausage uses UAs to complete shipping labels and forms that would be necessary to track food shipped by Quality Sausage in the event of a recall.

(e)   Because of the importance of UAs to Quality Sausage, Gilbert actually interfered with Nguyen's attempts to discipline UAs for poor work performance. Gilbert warned Nguyen away from attempting to discipline UAs and informed Nguyen that he (Gilbert) would handle the UAs.

Nguyen reasonably believed that Quality Sausage's use of UAs in the manufacturing, storing, and/or packaging of food constituted and constitutes an insanitary condition whereby food "may have been rendered injurious to health" in violation of the United States Federal Food, Drug, and Cosmetic Act (hereafter "FFDCA.")  21 U.S.C.A. §

342(a)(4).  Nguyen reasonably believed the use of UAs constituted a violation of the FFDCA.

(14)    Nguyen initially objected to Gilbert concerning the use of UAs at Quality Sausage's plant in September 2017. Nguyen also objected to numerous instances of UAs not employing appropriate food safety protocols, for example, Nguyen objected and reported to Gilbert Quality Sausage workers:

(a)    storing meat grinders on the floor;

(b)    putting moldy pepperoni into the stream of commerce;

(c)    using vinegar to conceal the fact that pepperoni had become moldy and then placing the pepperoni in the stream of commerce;

(d)    using what was called a "Mexican microwave" to thaw meat with steam in an unsanitary environment;

(e)    cross-contamination between frozen food area and cooked food area;

(f)    maintaining a generally unsanitary environment.

The FFDCA prohibits the following acts: "The introduction or delivery for introduction into interstate commerce of any food . . . that is adulterated or misbranded" and/or [t]he adulteration or misbranding of any food . . . in interstate commerce." 21 U.S.C.A. § 331 (a), (b). Importantly, a food is adulterated under the FFDCA "if it consists in whole or in part of any filthy, putrid, or decomposed substance, or if

it is otherwise unfit for food" or "if it has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health" or "damage or inferiority has been concealed in any manner" or "if any substance has been added thereto or mixed or packed therewith so as to . . . make [the quality of the food] appear better . . . than it is." Id., at § 342(a)(3), (4), (b)(3), (4) (emphasis added). The insanitary conditions referenced above rendered the Quality Sausage's products as adulterated foods in violation of the FFDCA.

(15)     Gilbert admitted to Nguyen that the Archer Service's personnel supplied to Quality Sausage were UAs. Gilbert reacted hostilely to Nguyen's reports. An angry Gilbert warned Nguyen that he was not to concern himself with this issue, stating (in substance) "You don't worry about that! That's not your job! You let me handle that!" After that Gilbert began to treat Nguyen differently. For example, Gilbert increased his scrutiny of Nguyen's work performance in an effort to increase pressure on Nguyen. Gilbert would also circumvent Nguyen and issue orders to Nguyen's subordinates rather than to Nguyen. Circumventing Nguyen was designed by Gilbert to erode Nguyen's authority to do his job as Plant Superintendent.

(16)     In November 2017, Nguyen made yet another report/objection concerning food safety. Nguyen noticed when he was coming onto his

shift that a metal detector used to screen meat for foreign metal objects prior to shipment was not functioning, yet meat products had flowed through the broken metal detector during the prior shift without being screened for foreign metal objects. Because Nguyen recognized that such unscreened meat may have been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health, Nguyen stopped production and reported the unsafe condition. By stopping production, the meat from the prior shift could not be shipped without being brought back through the metal detector. Moreover, no other meat on the line could be shipped until the metal detector was repaired. Gilbert became very angry with Nguyen for shutting down production and causing a situation that prevented unscreened meat from being placed into the stream of commerce. Though Nguyen was the one who noticed the problem and took appropriate action, Gilbert was angry with Nguyen for engaging in this protected activity because it adversely effected Quality Sausage's production.

(17)   In late January 2018, Nguyen made yet another report/objection because the UAs were completing paperwork incorrectly on food products entering the stream of commerce. This is particularly dangerous because of the need to be able to track food shipments in the event of a recall. Nguyen reported this dangerous situation to

Gilbert, who reacted negatively to this report as well.

(18)    In February 2018, Nguyen made another report to Gilbert about a food safety issue. Nguyen noticed that plant employees were cross-contaminating meats in grinding vats. In other words, chicken was ground in a vat, and then pork was ground in the same vat (or vise versa) but without proper sanitizing between grindings. This constituted and constitutes an insanitary condition that rendered such Quality Sausage products as adulterated foods in violation of the FFDCA. Gilbert again reacted negatively to Nguyen's objections and report, stating: "If the USDA doesn't know about it, leave it alone!" Gilbert and Nguyen had a heated exchange with Gilbert complaining about how following food safety protocols leads to slow product production.

(19)    Most, if not all, of these food safety issues relate to (flow from) Quality Sausage's use of UAs as Quality Sausage's primary and dominant workforce. UAs supplied by Archer Services are Quality Sausage's dominant workforce and, therefore, Nguyen's persistent complaints were perceived by Quality Sausage as constituting threats against Quality Sausage's existence.

C.    As summarized above, Nguyen engaged in protected activity within the scope of 21 United States Code section 399d (a) (1) and (4). Such protected activity consisted of past incidents of protected activity (provision of information and objections) as well as Nguyen being about to (or perceived by Quality Sausage

as being about to) provide or cause to be provided information within the scope of 21 United States Code section 399d (a)(1).

D.    One of the Secretary's findings was that Nguyen "engaged in protected activity under Section 402 of the FDA Food Safety Modernization Act . . . when he reported safety and health concerns to management regarding employees not being properly trained, as well as reporting cross contamination of meat products in the facility." Quality Sausage has not objected to such finding and agrees with such finding.

E.    One of the Secretary's findings was that Quality Sausage "had knowledge of [Nguyen's] protected activity." Quality Sausage has not objected to such finding and agrees with such finding.

8.    **Nguyen experienced adverse employment actions:**

A.    Nguyen suffered adverse employment actions soon after his FSMA protected activity as described above.

B.    Because Nguyen engaged in a pattern of exposing and objecting to conditions/activities at the plant that he believed to be illegal and dangerous to food safety, Gilbert made the decision to retaliate and/or discriminate against Nguyen by terminating Nguyen's employment with Quality Sausage. Gilbert, was motivated to discriminate and/or retaliate against and discharge Nguyen because he believed Nguyen was "about to provide or cause to be provided to the employer [or] the Federal Government" information contemplated by the anti-retaliation provision. 21 U.S.C.A. § 399d (a) (1). Based on Nguyen's provision of information/objections to Gilbert (as

described above) and based on the fact that Nguyen was continuing to provide such information/objections to Gilbert, and based on the fact that Nguyen was perceived as being about to provide further information/objections to Gilbert (and perhaps others, including Immigration and Customs Enforcement), Gilbert retaliated and/or discriminated against Nguyen as summarized below:

(1)     In order to carry out his unlawful termination plan against Nguyen, Gilbert used a person who Gilbert knew he could control and would function as an accomplice in an effort to falsely accuse Nguyen of wrongdoing in an effort to create a pretextual ground for termination.

(2)     Angel Alva (hereafter "Alva") was and is the person who Gilbert controlled and functioned as Gilbert's accomplice to falsely accuse Nguyen of wrongdoing in an effort to create a pretextual ground for termination.

(3)     At all times relevant, Gilbert was aware that Alva disliked Nguyen because Nguyen had attempted to improve Alva's poor work performance and save Quality Sausage money by not allowing Alva to log overtime hours.

(4)     At all times relevant, Nguyen believed Alva had a habit of loafing about and distracting other Quality Sausage employees from productive work.

(5)     At all times relevant, Alva had a habit of loafing about and distracting other Quality Sausage employees from productive work.

(6)     Alva has been known to leave his work area and sleep on the job.

(7)     Alva has been known to shirk his job responsibilities while on the job.

(8)     Alva has been known to leave the job site without permission.

(9)     On one occasion, Alva was late to work and gave Gilbert a false excuse that someone had stolen his work boots. Gilbert immediately recognized Alva was not telling the truth and sent Alva home for the day. On that occasion, Gilbert warned Alva that he (Alva) must arrive at work on time the next day and with his work boots. The next day Alva arrived on time and wearing the work boots that he had reported stolen.

(10)    Nguyen had complained to Gilbert and Shawn West that Alva was disrespectful and insubordinate to Nguyen and others.

(11)    Nguyen determined that it would constitute a waste of Quality Sausage resources to pay Alva overtime, when Alva was generally not a productive worker during his regular hours.

(12)    Nguyen believed it would constitute misconduct on his part to knowingly allow a Quality Sausage employee to log overtime hours when such employee was not a good worker during regular time and would not actually perform beneficial work for Quality Sausage while on overtime.

(13)    It would constitute misconduct on Nguyen's part to knowingly allow a Quality Sausage employee to log overtime hours when such employee was not a good worker during regular time and would not

actually perform sufficient beneficial work for Quality Sausage while on overtime.

(14)   No Quality Sausage rule or policy required Nguyen to allow Alva to log or work overtime hours.

(15)   It was within the scope of Nguyen's authority to choose Quality Sausage employees who had sufficient job performance during regular hours to deserve the privilege of working overtime hours for Quality Sausage.

(16)   Alva was a difficult employee to supervise because Alva was protected by Gilbert. Gilbert protected Alva because Alva was one of the only employees willing to clean the build-up of ice and frost from a Quality Sausage freezer.

(17)   Under Gilbert's influence and already holding a grudge against Nguyen, Alva invented a false story about Nguyen in order to create a pretext for Gilbert to terminate Nguyen's employment with Quality Sausage.

(18)   The false story that Alva invented was that Nguyen approached Alva to ask Alva if Alva knew where Nguyen could obtain an unregistered gun.

(19)   Nguyen never approached Alva and asked Alva where Nguyen could obtain an unregistered gun.

(20)   Alva then made a complaint against Nguyen to Quality Sausage on or about March 2, 2018.

(21)   Alva's complaint against Nguyen consisted of two parts as follows:

    (a)   Nguyen was treating Alva unfairly by not allowing him to log overtime hours;

    (b)   Nguyen had approached Alva and asked Alva if he knew where he (Nguyen) could obtain an unregistered handgun.

(22)   Nguyen was called to a meeting on Friday, March 2, 2018 with Gilbert and Quality Sausage's Human Resource Manager Ida Jimenez (hereafter "Jimenez").

(23)   During the Friday, March 2, 2018 meeting between Nguyen, Gilbert, and Jimenez (hereafter "the March 2, 2018 meeting"), Gilbert and Jimenez informed Nguyen of Alva's accusations as set forth above.

(24)   During the March 2, 2018 meeting, Nguyen acknowledged not allowing Alva to log overtime hours in order to save Quality Sausage from wasting money needlessly paying overtime to Alva, who was an unproductive worker.

(25)   During the March 2, 2018 meeting, Nguyen denied ever asking Alva any question concerning guns, including a question seeking to obtain information about how or where Nguyen could obtain an unregistered handgun.

(26)   During the March 2, 2018 meeting, Gilbert acknowledged that Quality Sausage had no evidence to support the accusation that Nguyen had asked Alva where Nguyen could obtain an unregistered handgun.

(27)   It would constitute employee misconduct on the part of Alva for him

to make a complaint to Quality Sausage that consists of a false accusation against another Quality Sausage employee, (including Nguyen).

(28) Prior to March 2, 2018, Quality Sausage did not have any known reason to take any disciplinary action against Nguyen.

(29) Prior to March 2, 2018, Quality Sausage had not taken any disciplinary action against Nguyen for any alleged misconduct on Nguyen's part.

(30) In late February 2018, Quality Sausage paid Nguyen a bonus check totaling more than $30,000.00.

(31) Prior to March 2, 2018, Quality Sausage believed Nguyen to be adequately performing all his assigned job duties.

(32) During the March 2, 2018 meeting, Gilbert sent Nguyen home before Nguyen's shift ended.

(33) During the March 2, 2018 meeting, Gilbert informed Nguyen that he should not report to work at Quality Sausage on Monday and should wait for a telephone call from Quality Sausage.

(34) Gilbert terminated Nguyen.

(35) On Monday, March 5, 2018, Jimenez telephoned Nguyen to inform him of Gilbert's decision to terminate Nguyen from Quality Sausage's employ.

(36) On Monday, March 5, 2018, Nguyen was terminated in retaliation for engaging in FSMA protected activity as described in this Complaint.

(37) Quality Sausage did not provide Nguyen a written termination notice

or any other document that set forth any ground for termination.

(38)   After March 5, 2018, Nguyen applied for unemployment with the Texas Workforce Commission ("TWC").

(39)   Quality Sausage opposed Nguyen's efforts to obtain unemployment compensation and claimed that Nguyen had been terminated as a result of misconduct.

(40)   The term "misconduct" is defined in Texas law to mean "mismanagement of a position of employment by action or inaction, neglect that jeopardizes the life or property of another, intentional wrongdoing or malfeasance, intentional violation of a law, or violation of a policy or rule adopted to ensure the orderly work and the safety of employees." Tex. Labor Code § 201.012 (a).

(41)   Quality Sausage claimed to the Texas Workforce Commission that Nguyen was guilty of misconduct because he asked Alva where he (Nguyen) could obtain an unregistered handgun.

(42)   The Texas Workforce Commission ultimately rejected Quality Sausage's claim that Nguyen was guilty of misconduct and awarded Nguyen unemployment compensation.

(43)   The Texas Workforce Commission sent a letter to Quality Sausage that contained the following sentence concerning Nguyen's unemployment compensation claim: "Reason for Decision: Our investigation found that your employer fired you for a reason that was not misconduct connected with the work."

(44)    Quality Sausage did not appeal the decision of the Texas Workforce Commission to award Nguyen unemployment compensation.

C.     One of the Secretary's findings was that Nguyen "experienced an adverse employment action when [Quality Sausage] terminated his employment on March 5, 2018." Quality Sausage has not objected to such finding and agrees with such finding.

9.     **Nguyen sustained and is continuing to sustain damages as a result of the adverse employment actions taken against him by Quality Sausage:**

A.     While working for Quality Sausage, Nguyen received the following wages and benefits:

(1)    Nguyen's base yearly salary at Quality Sausage at the time of his termination was $92,718.00.

(2)    Nguyen averaged an additional $800.00 per pay period in overtime while working for Quality Sausage.

(3)    Quality Sausage also paid Nguyen a yearly bonus of at least 20% of his salary.

(4)    Quality Sausage also provided Nguyen with valuable benefits including 401k matching and health/dental/life insurance.

B.     Nguyen lost the foregoing wages and benefits as a result of his termination on March 5, 2018 as described in paragraph 8. B. (36) above.

C.     After being terminated from Quality Sausage, Nguyen has been unable to find permanent employment or employment wherein he earns the amount of wages and benefits he earned while working for Quality Sausage.

D.     Nguyen has been the main breadwinner for his house. Nguyen suffered mental anguish, inconvenience, and loss of enjoyment of life as a result of Quality Sausage's illegal discrimination and discharge. Nguyen was falsely accused of trying to purchase an unregistered gun. Nguyen was forced to apply for and collect unemployment compensation—while successfully fending off further false accusations of employment misconduct. And even after he managed to find employment, his compensation was a fraction of what he used to earn.

## CAUSE OF ACTION

10.   In an effort to ensure the enforcement of the FFDCA, the Food Safety Modernization Act (FSMA) was enacted into law and includes critically important anti-retaliation protections for employees in the food industry who engage in protected activity. The FSMA anti-retaliation provision states, in relevant part, as follows:

> No entity engaged in the manufacture, processing, packing, transporting, distribution, holding, or importation of food may discharge an employee or otherwise discriminate against an employee with respect to compensation, terms, conditions, or privileges of employment because the employee, whether at the employee's initiative or in the ordinary course of the employee's duties (or any person acting pursuant to a request of the employee) --
>
> (1)    provided, caused to be provided, or is about to provide or cause to be provided to the employer, [or] the Federal Government . . . information relating to any violation of, or any act or omission the employee reasonably believes to be a violation of any provision of this chapter or any order, rule, regulation, standard, or ban under this chapter, or any order, rule, regulation, standard, or ban under this chapter
> . . .
>
> (4)    objected to, or refused to participate in, any activity,

> policy, practice, or assigned task that the employee (or other such person) reasonably believed to be in violation of any provision of this chapter, or any order, rule, regulation, standard, or ban under this chapter.

21 U.S.C.A. § 399d (a) (1), (4). Under the plain wording of the statute, protected activity is  tremendously broad and encompasses not only past incidents of protected activity (defined above) but also covers employees "about to provide or cause to be provided to the employer [or] the Federal Government" information contemplated by the anti-retaliation provision. *Id*., at (a)(1) (emphasis added). Similarly, to engage in protected activity under FSMA's anti-retaliation statute, the information that the employee has provided—or is about to provide— need only "relat[e]" to "any act or omission the employee reasonably believes to be a violation of [the FFDCA] or any order, rule, regulation, standard or ban under [the FFDCA], or any order, rule, regulation, standard, or ban under [the FFDCA]." *Id.*

11.     As summarized in the Statement of the Claim (above), Quality Sausage retaliated and/or discriminated against and discharged Nguyen because of his protected activity in violation of the FSMA's anti-retaliation provision. *See* 21 U.S.C.A. § 399d. At a minimum, Nguyen's protected activity was a contributing factor in the unfavorable personnel actions taken against Nguyen as alleged herein. See 21 U.S.C.A. 399d (b)(2)(C)(iii).

## DAMAGES

12.     Pursuant to the FSMA, Nguyen is entitled to recover and seeks all relief necessary to make him whole, including compensatory relief and special damages, including

the following elements of damage:

- lost wages and benefits in the past (plus interest) and lost wages and benefits in the future; and

- mental anguish (including inconvenience and loss of enjoyment of life), past and future.

## ATTORNEYS' FEES AND COSTS

13. Pursuant to the FSMA, Nguyen is entitled to recover and seeks "litigation costs, expert witness fees, and reasonable attorney's fees." 21 U.S.C.A. § 399d. (b)(4)(B)(iii).

14. With regard to attorney's fees, the undersigned counsel's hourly rate is $500.00, which is a reasonable fee under a lodestar analysis. *See e.g.*, *Fluor Corp. v. Citadel Equity Fund Ltd.*, 2011 WL 3820704, at *5 (N.D. Tex. Aug. 26, 2011) ("In other cases involving Texas lawyers, the hourly rates range from $220 for associates to $510 for senior partners.") (citing several cases and the range of hourly rates).

15. A $500.00 per hour attorney fee rate is reasonable for an attorney of the undersigned counsel's experience and reputation. More than five years ago a rate of $400 per hour was approved for the attorneys of The Fillmore Law Firm, LLP. *See Reyelts v. Cross*, 968 F.Supp. 2d 835, 849 (N.D. Tex. 2013), *aff'd* 566 Fed. Appx. 316 (5th Cir. 2014).

16. As of the filing of this Complaint, the amount of hours reasonably incurred by Nguyen's attorneys, in representing Nguyen and prosecuting Nguyen's claim against Quality Sausage, exceeds 120 hours. Accordingly, as of the filing of this Complaint, the amount of attorneys' fees Nguyen is entitled to recover exceeds $60,000.00. As

this case proceeds, the amount of recoverable attorneys' fees will increase.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands that all fact issues be determined by a jury following a trial on the merits.

## DEMAND FOR JUDGMENT

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer herein and that upon final hearing, Plaintiff have judgment against Defendant for all damages alleged and pleaded herein, prejudgment interest as allowed by law, post-judgment interest, court costs, expert witness fees, special damages as allowed by law and for such other and further relief to which he may show himself to be entitled.

Respectfully submitted:


   *H. Dustin Fillmore III*
H. Dustin Fillmore III
State Bar No. 06996010

**THE FILLMORE LAW FIRM, L.L.P.**
1200 Summit Ave., Suite 860
Fort Worth, Texas 76102
817-332-2351 - Office
817-870-1859 - Fax
dusty@fillmorefirm.com


**ATTORNEYS FOR PLAINTIFF**