IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

LAM VAN "TOMMY" NGUYEN,

    Plaintiff,

vs.

QUALITY SAUSAGE COMPANY, LLC,

    Defendant.

Civil Action No. 4:19-cv-00150-P

**PLAINTIFF'S FIRST MOTION TO COMPEL
AND BRIEF IN SUPPORT**

TO THE HONORABLE MARK T. PITTMAN UNITED STATES DISTRICT JUDGE:

Plaintiff Lam Van "Tommy" Nguyen his First Motion to Compel and Brief in Support ("Motion") against Defendant Quality Sausage Company, LLC.

### I. AN ISSUE OF FIRST IMPRESSION

This Motion presents an issue of first impression concerning the scope of protected activity under the FDA Food Safety Modernization Act's ("FSMA") antiretaliation provision. An important part of Mr. Nguyen's FSMA protected activity is his complaint about Quality Sausage's alleged use (and dangers associated with the use) of illegal aliens in the production of food.[1] Mr. Nguyen's position is that the plain text of the FSMA's antiretaliation provision protects Mr. Nguyen (and all other persons covered by the

---

[1] Plaintiff will use the term "illegal aliens" because it is the term used in federal immigration statutes and in opinions of the Supreme Court of the United States and other courts. *See, e.g.*, 8 U.S.C. § 1365; *Arizona v. U.S.*, 567 U.S. 387 (2012); *Maria S. as Next Friend for E.H.F. v. Garza*, 912 F.3d 778, 784 (5th Cir. 2019), cert. denied, 140 S. Ct. 81, 205 L. Ed. 2d 27 (2019); *Crane v. Napolitano*, 3:12-CV-03247-O, 2013 WL 1744422, at *5 (N.D. Tex. Apr. 23, 2013) (using the term "illegal alien").

FSMA) from retaliation when opposing the use of illegal aliens in connection with the production or service of food in the United States. Therefore, Mr. Nguyen argues that the immigration status of certain Quality Sausage workers falls within the scope of federal discovery. Quality Sausage believes the immigration status of workers in the food industry can never be within the scope of protected activity under the FSMA. Therefore, Quality Sausage takes the position that discovery concerning the immigration status of Quality Sausage's workers (or any other entity covered by the FSMA) is forbidden, because it is outside the scope of discovery.

When an FSMA-covered employee (like Mr. Nguyen) risks his job by raising concerns to his employer about food safety in connection with the employer's use of illegal alien workers, has that employee, as a matter of law, stepped outside the scope of FSMA protected activity? The Court's determination of this issue will impact, not only Mr. Nguyen, but all those engaged in the food production and service industry in the United States.

## II. PROCEDURAL BACKGROUND

| | |
|---|---|
| August 29, 2019 - | Mr. Nguyen served his "First Set of Written Discovery to Defendant." *See* Appendix Item ("App." hereafter) A at 02–13. |
| September 30, 2019 - | Quality Sausage served its "Objections and Responses to Plaintiff's First Request for Admissions" (App. B) at 16–17, "Objections and Answers to Plaintiff's First Interrogatories" (App. C) at 19–22, and "Objections and Responses to Plaintiff's First Request for Production" (App. D) at 26–33. |

### III. ARGUMENT & AUTHORITIES

#### A. The Broad Scope of Federal Discovery.

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). In this context, courts construe relevance broadly. *See, e.g.*, *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (information is relevant if it bears on, or "reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case."); *Samsung Elecs. Am. Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 280 (N.D. Tex. 2017); *Gray v. RaceTrac Petroleum, Inc.*, 3:18-CV-1654-N, 2019 WL 5789327, at *1 (N.D. Tex. Nov. 5, 2019) ("Courts construe relevance broadly, as a document need not, by itself, prove or disprove a claim or defense or have strong probative force to be relevant.") (citing *Samsung Elecs. Inc.*).

#### B. This Case's Claims and Defenses.

As noted above, this is a wrongful termination case under the antiretaliation provision of the FSMA. *See* 21 U.S.C. § 399d; *see generally* Plaintiff's Original Complaint (ECF Doc. 1) ("Complaint"). Quality Sausage has put in dispute the great majority of Mr. Nguyen's factual averments. *See generally*, Defendant's "Original Answer to Plaintiff's Complaint" (ECF Doc. 7) ("Answer").

**1. The importance of the issues at stake in this action.**

Critically important to a Rule 26(b)(1) analysis of the scope of discovery is an analysis of the importance of the issues at stake in the action. *See* Fed. R. Civ. P. 26(b)(1). The importance of the issues at stake in this action would be difficult to overstate.

**a. The importance of food safety to the United States.**

The United States Congress has found that the safety and integrity of the United States food supply are vital to public health, public confidence in the food supply, and the success of the food sector of our Nation's economy. *See* 21 U.S.C. § 2101 (1). Congress has further found that the task of preserving the safety of our Nation's food supply faces tremendous pressures including "emerging pathogens and other contaminants and the ability to detect all forms of contamination." *Id.* at (2). There is also a growing concern about the vulnerability of our food supplies to terrorist attacks. *See* App. E at 37–53. Indeed, the Supreme Court of the United States observed long ago that the "public interest in the purity of its food is so great as to warrant the imposition of the highest standard of care on distributors." *U.S. v. Park*, 421 U.S. 658, 671 (1975).

In view of the importance of the safety and integrity, the Federal Food, Drug, and Cosmetic Act ("FFDCA") was enacted and signed into law. *See* 21 U.S.C. § 301 *et seq.* Relevant to the instant Motion, the FFDCA prohibits the following acts: "The introduction or delivery for introduction into interstate commerce of any food . . . that is adulterated or misbranded" and/or [t]he adulteration or misbranding of any food . . . in interstate commerce." 21 U.S.C. § 331 (a), (b). Importantly, a food is adulterated under the FFDCA under *any* of the following circumstances:

- "if it consists in whole or in part of any filthy, putrid, or decomposed substance, or if it is otherwise unfit for food"; or

- "if any substance has been added thereto or mixed or packed therewith so as to . . . make [the quality of the food] appear better . . . than it is"; or

- "damage or inferiority has been concealed in any manner"; or

- "if it has been prepared, packed, or held under insanitary conditions whereby it *may* have become contaminated with filth, or whereby it *may* have been rendered injurious to health."

*Id.* at § 342(a)(3), (4), (b)(3), (4) (emphasis added).

The "highest standard of care" is imposed on those persons and businesses charged with FFDCA compliance. *U.S. v. Park*, 421 U.S. at 676. Individuals face criminal prosecution for failing to take steps to ensure FFDCA compliance. *Id.* at 667–78 ("We are satisfied that the [FFDCA] imposes the highest standard of care and permits conviction of responsible corporate officials who, in light of this standard of care, have the power to prevent or correct violations of its provisions."). Indeed, under the FFDCA an individual is criminally liable without regard to whether he or she was personally aware of wrongdoing, as long as it is established that the individual had, by reason of his or her position in the corporation, responsibility and authority either to prevent in the first instance, or promptly to correct, a violation of the FFDCA, and failed to do so. *Id.* at 672–74. Thus, the FFDCA is designed "to make 'distributors of food the strictest censors of their merchandise'" by "punish[ing] 'neglect where the law requires care, or inaction where it imposes a duty.'" *Id.* at 671 (quoting *Morissette v. U.S.*, 342 U.S. 246, 255 (1952)).

### b.  The importance of the FSMA to food safety.

Given the congressionally recognized importance of food safety to the health and prosperity of the United States, combined with the highest standard of food safety care

imposed by the FFDCA, it is unsurprising that Congress has also enacted the FSMA's anti-retaliation protections for, *inter alia*, food-industry personnel who blow (or are perceived by the employer as being about to blow) the whistle on non-compliance with the FFDCA. *See* 21 U.S.C. § 399d.[2] Neither is it shocking that the scope of FSMA protected activity is broad and encompasses any covered employee who—"whether at the employee's initiative or in the ordinary course of the employee's duties"—

- provided, caused to be provided, or is about to provide or cause to be provided to the employer, [or] the Federal Government . . . information relating to any violation of, or any act or omission the employee reasonably believes to be a violation of any provision of this chapter or any order, rule, regulation, standard, or ban under this chapter, or any order, rule, regulation, standard, or ban under this chapter; or

- objected to, or refused to participate in, any activity, policy, practice, or assigned task that the employee (or other such person) reasonably believed to be in violation of any provision of this chapter, or any order, rule, regulation, standard, or ban under this chapter.

21 U.S.C. § 399d-(a)-(1), (4). A suit (like this one), that involves the interpretation and enforcement of the FSMA's antiretaliation provision—especially the scope of protected activity under the FSMA—is a suit that carries with it the importance of the FFDCA and food safety itself.

## 2. Plaintiff's FSMA protected activity and Defendant's retaliation.

Quality Sausage has judicially admitted that, at all times relevant, both it and Mr. Nguyen were covered under the FSMA. *Compare* Complaint at 4–5 (Mr. Nguyen alleging, in paragraphs 5 and 6, that both Quality Sausage and he were covered under the FSMA) *with* Answer at 2 (Quality Sausage admitting the averments in paragraphs 5 and 6 of the

---

[2]The FSMA's antiretaliation provision covers any person employed by an entity "engaged in the manufacture, processing, packing, transporting, distribution, reception, holding, or importation of food." *See* 21 U.S.C. § 399d. (a).

Complaint). Relevant to the instant Motion, Mr. Nguyen's pleading also contains a detailed description of FSMA protected activity, and Quality Sausage denies Mr. Nguyen engaged in FSMA protected activity. *Compare* Complaint at 5–15 (Mr. Nguyen describing, in paragraph 7, his FSMA protected activity) *with* Answer at 2–3 (Quality Sausage mostly denying the factual averments of paragraph 7).

Important to his FSMA protected activity, Mr. Nguyen alleges that he reported about, objected to, and was perceived as about to report about, Quality Sausage's alleged use of illegal aliens supplied by a "temp service," Archer Services. Complaint at 6–15 (Mr. Nguyen directly or indirectly referring to illegal aliens in paragraphs 7.B.(3), (5)–(15), (17), (19) in connection with his FSMA protected activity). While Quality Sausage admits that Archer services supplies workers to Quality Sausage, it mostly denies Mr. Nguyen's allegations, including the allegation that illegal aliens are among the workers supplied to Quality Sausage by Archer Services. *See* Answer at 2–3; *see also* App. F at 55–56.

Mr. Nguyen's pleading also contains detailed allegations connecting his protected activity with Quality Sausage's retaliation (including termination) against him because of his protected activity. Complaint at 15–22 (Mr. Nguyen describing, in paragraph 8, Quality Sausage's retaliation). Unsurprisingly, Quality Sausage denies that it retaliated against Mr. Nguyen because of FSMA protected activity, and further denies that its reason for terminating Mr. Nguyen was pretextual. Answer at 3–5 (Quality Sausage mostly denying the factual averments of paragraph 8).

### 3.  Mr. Nguyen's Discovery Requests.

While admitting that it and Mr. Nguyen were covered by the FSMA's antiretaliation provision, Quality Sausage disputes just about every other issue. Thus, Mr. Nguyen served

discovery requests designed to obtain discovery relevant to these disputed issues. *See, e.g.*, *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (information is relevant if it bears on, or "reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case.")

### a. Discovery concerning the immigration status of workers supplied by Archer Services.

Mr. Nguyen served requests exploring the true immigration status of Quality Sausage's workers supplied by Archer Services: Requests for Admission 1 and 2, Interrogatory 3, and Requests for Production 22, 26, and 27. App. A at 11–12. Quality Sausage has stonewalled these discovery requests with boilerplate objections, including boilerplate relevancy objections. App. B at 16–17; App. C at 21–22; and App. D at 31–32. Though Quality Sausage intends to dispute any suggestion that any of its Archer Services workers are illegal aliens, it refuses to allow Mr. Nguyen to explore this issue in any meaningful way. Why? Quality Sausage believes that the immigration status of food industry workers can never be a part of protected activity under the FMSA—hence Quality Sausage's relevancy objections.

### b. Discovery concerning the facts surrounding Mr. Nguyen's termination.

Quality Sausage admits that prior to March 2, 2018 (the day of the meeting that resulted in Mr. Nguyen's termination) Quality Sausage believed Mr. Nguyen was adequately performing all his assigned job duties. *Compare* Complaint at 21 (paragraph 8. B. (31)) *with* Answer at 4 (Quality Sausage answering paragraph 8. B. (31), "Admitted"). But on March 2, 2018 Angel Alva, a Quality Sausage employee subordinate to Mr. Nguyen, accused Mr. Nguyen of two things: (1) treating Mr. Alva unfairly by not allowing him to

log overtime hours; and (2) asking Mr. Alva where he (Nguyen) could purchase an unregistered handgun. *Compare* Complaint at 18–19 (paragraphs 8. B. (20), (21)) *with* Answer at 4 (Quality Sausage answering paragraphs 8. B. (20), (21), "Admitted"). Mr. Nguyen denied these accusations made by his subordinate employee. *Compare* Complaint at 19 (paragraph 8. B. (25)) *with* Answer at 4 (Quality Sausage answering paragraph 8. B. (25) "Admitted").

Is Mr. Alva a truthful person? Quality Sausage admits that it was aware that Angel Alva had made false statements in the past. *Compare* Complaint at 17 (paragraph 8. B. (9)) *with* Answer at 3 (Quality Sausage answering paragraph 8. B. (9) "Admitted"). Yet, Quality Sausage sent Mr. Nguyen home on March 2 and fired him on March 5, 2018. *Compare* Complaint at 20 (paragraphs 8. B. (32), (35)) *with* Answer at 4–5 (Quality Sausage answering paragraphs 8. B. (32), (35) and admitting such facts).

What was Quality Sausage's stated reason for firing Mr. Nguyen? Quality Sausage admits that the position it took before the Texas Workforce Commission was that it fired Mr. Nguyen because of misconduct consisting of Mr. Nguyen asking co-employee Angel Alva "where he (Nguyen) could obtain an unregistered handgun." *Compare* Complaint at 21 (paragraphs 8. B. (39), (41)) *with* Answer at 5 (Quality Sausage answering paragraphs 8. B. (39), (41) "Admitted"). Quality Sausage's new termination excuse is that "decision-makers were aware of allegations about Plaintiff's conduct and past issues with his performance, but *the sole reason* that they made the decision to terminate his employment was because when [Mr. Nguyen] was directly asked whether he would treat all employees fairly, he did not answer, indicating that he did not agree to that basic standard." *Id.* at 17 (emphasis added). Quality Sausage identifies its "decision-makers" as

Todd Gilbert (the person to whom Mr. Nguyen made his FSMA complaints), Steve O'Brien, Gene Eisen, Fred Koelweyn, and Ida Jimenez." App. C at 16.

Unsurprisingly, Mr. Nguyen's discovery requests seek information relevant to his performance as a Quality Sausage employee, his protected activity, the nexus between his protected activity and his termination, and the falsity of Quality Sausage's shifting excuses for terminating him: Requests for Production 14–18, and 23. App. A at 10–11. Mr. Nguyen seeks to discover relevant communications between and received by the Quality Sausage's "decision-makers." *Id.* at 10 (requests 14–18). Mr. Nguyen also seeks the overtime hours logged by Angel Alva since November 1, 2016, the day Mr. Nguyen started work for Quality Sausage, to determine the average of Mr. Alva's overtime hours during and after Mr. Nguyen's employment at Quality Sausage. *Id.* at 11 (request 23). However, Quality Sausage has lodged unmeritorious, boilerplate objections to each of these discovery requests as well and has either refused to respond or has responded in violation of Federal Rule of Civil Procedure 37(a)(4). App. D at 29–31 (requests 14–18, 23).

## IV. RELIEF REQUESTED

The discovery sought by Mr. Nguyen falls squarely within the broad scope of federal discovery. Mr. Nguyen respectfully submits that Quality Sausage's objections should be overruled and it should be ordered to fully respond to the discovery requests that are the subject of this Motion. Accordingly, pursuant to Federal Rule of Civil Procedure 37(a)(3)(B)(iii) and (iv), Mr. Nguyen requests the Court for an order compelling full and complete responses (including production) to the interrogatories and requests for production specified above. Pursuant to Federal Rule of Civil Procedure

36(a)(6), Mr. Nguyen requests the Court to overrule Quality Sausage's objections to the requests for admission, and require it to re-answer those requests.

## V. CONCLUSION

The Court should grant Mr. Nguyen's First Motion to Compel.

Respectfully submitted,

By:   */s/ H. Dustin Fillmore III*                     and
      H. Dustin Fillmore III
      State Bar No. 06996010              Jonathan F. Mitchell
      Charles W. Fillmore                 Texas Bar No. 24075463
      State Bar No. 00785861              MITCHELL LAW PLLC
                                          111 Congress Avenue, Suite 400
      THE FILLMORE LAW FIRM, LLC          Austin, Texas 78701
      1200 Summit Avenue, Suite 860       (512) 686-3940 (office)
      Fort Worth, Texas 76102             (512) 686-3941 (fax)
      (817) 332-2351 (office)             jonathan@mitchell.law
      (817) 870-1859 (fax)
      dusty@fillmorefirm.com
      chad@fillmorefirm.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF CONFERENCE

Pursuant to and in compliance with Federal Rule of Civil Procedure 37(a)(1), the undersigned counsel, in good faith, conferred with Defendant's counsel (Allyn Lowell) in an effort to obtain the discovery without court action. More specifically, on October 29, 2019, the undersigned counsel and Ms. Lowell conferred over the phone for approximately one hour. Thereafter, on November 8, 2019, the undersigned counsel sent to Ms. Lowell a letter in further attempt to avoid the necessity of this Motion. *See* App. G. Ms. Lowell responded to the letter on November 19, 2020. *Id.* A review of such letter will reveal that the undersigned counsel and Ms. Lowell were able to reach agreements that narrowed the scope of the discovery dispute. However, the undersigned counsel and Ms. Lowell were unable to reach agreement concerning the issues presented to the Court in this Motion. Accordingly, this Motion is presented to the Court for determination.

*/s/ H. Dustin Fillmore III*

CERTIFICATE OF SERVICE

On January 29, 2020, this Motion was served on Defendant, in compliance with Federal Rule of Civil Procedure 5(b)(1),(2)(E), by filing it with the Court's electronic-filing system.

*/s/ H. Dustin Fillmore III*